**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
-----------------------------X
                             :
JAN M. GAWLIK                :    Civil No. 3:20CV00564(SALM)
                             :
v.                           :
                             :
SCOTT SEMPLE, et al.         :    June 14, 2022
                             :
-----------------------------X
```

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Self-represented plaintiff Jan M. Gawlik ("Gawlik" or "plaintiff"), a sentenced inmate[1] at Cheshire Correctional Institution ("Cheshire"), brings this action relating to events occurring during his incarceration in the custody of the Connecticut Department of Correction ("DOC").

Pursuant to Federal Rule of Civil Procedure 56(a), defendants Brown, Buckland, Cunningham, Czeremcha, Erfe, Parker, Quiros, Semple, Smith, Watson, and Williams ("defendants") move for summary judgment on the ground that "there is no triable

---

[1] The Court may take judicial notice of matters of public record. See, e.g., Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); United States v. Rivera, 466 F. Supp. 3d 310, 313 (D. Conn. 2020) (taking judicial notice of BOP inmate location information); Ligon v. Doherty, 208 F. Supp. 2d 384, 386 (E.D.N.Y. 2002) (taking judicial notice of state prison website inmate location information). The Court takes judicial notice of the Connecticut DOC website, which reflects that Gawlik was sentenced on January 9, 2015, to a term of imprisonment that has not expired. See http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=138888 (last visited June 13, 2022).

issue of material fact that the Plaintiff ... , failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act[.]" Doc. #56 at 1. For the reasons set forth below, defendants' Motion for Summary Judgment [**Doc. #56**] is **GRANTED**.

I.   <u>**PROCEDURAL BACKGROUND**</u>

Plaintiff brought this action on April 27, 2020. <u>See</u> Doc. #1. On that same date, plaintiff filed a motion for leave to proceed <u>in</u> <u>forma</u> <u>pauperis</u>. <u>See</u> Doc. #2. Plaintiff's motion was denied, <u>see</u> Doc. #12, and on September 2, 2020, plaintiff paid the filing fee. On September 27, 2021, Judge Stefan R. Underhill, the then-presiding Judge, conducted an initial review of the Complaint. <u>See</u> Doc. #25. Judge Underhill permitted the following claims to proceed:

> (1) the Eighth Amendment excessive force claim asserted against Lieutenant Czeremcha and Officers Buckland, Brown, Smith, Parker, and Cunningham in their individual capacities; (2) the First Amendment free exercise claim asserted against Lieutenant Czeremcha, Captain Watson and Officers, Smith, Buckland, Brown, Parker, and Cunningham in their individual and official capacities and against Commissioner Semple, Warden Erfe, District Administrator Quiros, and Director Williams in their officials capacities to the extent that Gawlik seeks injunctive relief related to the claim; and (3) the [Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA")] claim asserted against Lieutenant Czeremcha, Captain Watson, Officers, Smith, Buckland, Brown, Parker, and Cunningham, Commissioner Semple, Warden Erfe, District Administrator Quiros, and Director Williams in their official capacities for injunctive and declaratory relief.

> I will additionally exercise supplemental jurisdiction over the state law assault and battery claims raised against Officers Buckland and Brown in their individual capacities.

Id. at 39. On October 15, 2021, this case was transferred to the undersigned "for all further proceedings." Doc. #28.

On December 14, 2021, defendants filed a Motion to Dismiss the official capacity claims. See Doc. #34. That motion remains pending.[2] On December 20, 2021, the Court entered a Scheduling and Case Management Order that ordered "each defendant [to] determine whether there is a basis to dismiss this action, in whole or in part, for any reason, including but not limited to the following: (a) failure to exhaust administrative

---

[2] Defendants' motion to dismiss is limited to the official capacity claims. See Doc. #34 at 1. Defendants assert that "[p]laintiff failed to effect official capacity service in accordance with Rule 4 of the Federal Rules of Civil Procedure." Id. Ordinarily, the Court would grant plaintiff another opportunity to effect proper service. See Fed. R. Civ. P. 4(m) ("[I]f the plaintiff shows good cause for the failure[]" to timely effect service, "the court must extend the time for service for an appropriate period." (emphasis added)); Harrison v. New York, 95 F. Supp. 3d 293, 317-20 (E.D.N.Y. 2015) (explaining the factors considered by the Court when determining whether to grant an extension where plaintiff has not shown good cause). However, the question of whether plaintiff has properly exhausted his administrative remedies pursuant to the PLRA is dispositive of the official and individual capacity claims. Thus, the Court finds it appropriate to resolve defendants' motion for summary judgment first, to avoid any unnecessary expense to plaintiff that would result from attempting to properly serve defendants in their official capacities.

remedies[.]" Doc. #35 at 4. The Scheduling and Case Management
Order further stated:

> If a defendant believes that there is a sound basis to
> assert that the matter should be dismissed for failure
> to exhaust administrative remedies, but that such a
> question must be determined by a motion for summary
> judgment rather than a motion to dismiss, defendant may
> file a preliminary motion for summary judgment on or
> before February 11, 2022, on that issue.

Id. (emphasis removed).

On February 8, 2022, as permitted by the Scheduling and
Case Management Order, defendants filed a motion for summary
judgment, limited to the argument that plaintiff failed to
exhaust his administrative remedies. See Doc. #56. The Court
granted plaintiff an extension of time to file a response, see
Doc. #61, and on March 31, 2022, plaintiff filed an objection to
defendants' motion for summary judgment. See Doc. #76. On April
13, 2022, defendants filed a reply. See Doc. #80. On April 21,
2022, plaintiff filed a "reply to defendants reply of objection
re: early motion for summary judgment[.]" Doc. #81 at 1 (sic).[3]

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that

---

[3] The Court notes that this filing is, effectively, a sur-reply.
The Local Rules provide: "No sur-replies may be filed without
permission of the Court, which may, in its discretion, grant
permission upon a showing of good cause." D. Conn. L. Civ. R.
7(d) (emphasis added). The Court has considered the arguments
raised in plaintiff's sur-reply; however, plaintiff is reminded
of the importance of complying with the Federal and Local Rules.

there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002). The moving party may discharge this burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).

In deciding a motion for summary judgment, the Court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Beyer v. Cnty. of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citation and quotation marks omitted). "If there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party, summary judgment must be denied." Am. Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH, 446 F.3d 313, 315 (2d Cir. 2006) (citation and quotation marks omitted).

"[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to formal pleadings drafted by lawyers. ... This liberal standard, however, does not excuse a pro se litigant from following the procedural formalities of summary judgment." Govan v. Campbell, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (citations and quotation marks omitted). A plaintiff's "pro se status d[oes] not eliminate his obligation to support his claims with some evidence to survive summary judgment." Nguedi v. Fed. Rsrv. Bank of N.Y., 813 F. App'x 616, 618 (2d Cir.), cert. denied, 141 S. Ct. 825 (2020). "[A] pro se party's bald assertion, completely unsupported by evidence is not sufficient to overcome a motion for summary judgment." Hamilton v. Gen. Motors Hourly-Rate Employee's Pension Plan, 101 F. Supp. 3d 202, 209 (N.D.N.Y. 2015) (citation and quotation marks omitted).

Pursuant to the District of Connecticut Local Rules, "[a] party opposing a motion for summary judgment shall file and serve with the opposition papers a document entitled 'Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment,' which shall include a reproduction of each numbered paragraph in the moving party's Local Rule 56(a)1 Statement followed by a response to each paragraph admitting or denying the fact and/or objecting to the fact as permitted by Federal Rule of Civil Procedure 56(c)." D. Conn. L. Civ. R. 56(a)(2)(i) (emphasis

6

added). When a party fails to controvert a fact set forth in the opposing party's Local Rule 56(a)(1) statement, it will be deemed admitted if it is "supported by the evidence[.]" D. Conn. L. Civ. R. 56(a)(1).

III. **<u>FACTUAL BACKGROUND</u>**

The following facts are derived from the parties' submissions pursuant to Local Rule 56(a) and the affidavits, declarations, and exhibits attached thereto.

As required, defendants provided the Local Rule 56(b) Notice to Self-Represented Litigant Regarding Summary Judgment, a copy of Local Rule 56, and a copy of Federal Rule 56, to plaintiff in conjunction with their motion for summary judgment. <u>See</u> Doc. #56-5. Despite this Notice, which explicitly informed plaintiff that he was required to "respond to specific facts the movant claims are undisputed (see Local Rule 56(a)(2))" and to "support [his] claims with specific references to evidence[,]" Doc. #56-5 at 2, plaintiff did not file a Rule 56(a)(2) Statement. The Court specifically drew plaintiff's attention to these attachments in its February 15, 2022, Order. <u>See</u> Doc. #61 ("Plaintiff has also been provided with the relevant Local and Federal rules. <u>See</u> Doc. #56-5."). Plaintiff has had ample notice of, and opportunity to meet, the Local Rule 56(a)(2) requirement, and has failed to do so.

Defendants noted this failure in their reply. See Doc. #80 at 1. Plaintiff responds that he "must be afforded lenien[cy]" because he is not an attorney and that "[i]t is well established that a court is ordinarily obligated to afford a 'special solicitude' to pro-se litigants[.]" Doc. #81 at 1.

> The court is well aware ... that the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest. This policy of liberally construing pro se submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. On the other hand, pro se parties are not excused from abiding by the Federal Rules of Civil Procedure.

Wilks v. Elizabeth Arden, Inc., 507 F. Supp. 2d 179, 185 (D. Conn. 2007) (citations and quotation marks omitted).

Plaintiff was provided ample notice of the requirement to file a Local Rule 56(a)(2) statement with his response to defendants' motion for summary judgment. See Cusamano v. Sobek, 604 F. Supp. 2d 416, 426 (N.D.N.Y. 2009) ("[T]he Court extends special solicitude to the pro se litigant largely by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment." (emphasis added)); Wu v. Nat'l Geospatial Intel. Agency, No. 3:14CV01603(DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting that the self-represented plaintiff "was advised on two

separate occasions of the need to comply with Local Rule 56 and
specifically of the need to file a Local Rule 56(a)2 Statement"
but had failed to do so, and therefore deeming the statements in
the movant's Statement of Undisputed Facts admitted).

"[T]o the extent that [defendants'] factual assertions are
properly supported by the evidence the Court will deem those
assertions admitted." Wu, 2017 WL 923906, at *2 (emphasis
added); see also Otero v. Purdy, No. 3:19CV01688(VLB), 2021 WL
4263363, at *10 (D. Conn. Sept. 20, 2021) ("deem[ing]
Defendants' 56(a)1 statements to be admitted as they are
properly supported by the evidence[]" and the self-represented
plaintiff did not file a Local Rule 56(a)(2) statement).
However, to the extent that a fact is refuted by plaintiff's
response to defendants' motion for summary judgment, the Court
will consider that fact disputed. See Wilks, 507 F. Supp. 2d at
185-86 ("For the purposes of this motion, however, the court
shall deem admitted all facts set forth in the Defendant's
compliant Local Rule 56(a)(1) Statement that are supported by
the evidence and not refuted by the Plaintiff's opposition
memorandum."). Accordingly, the Court will deem all facts in
defendants' Local Rule 56(a)(1) statement that are supported by
the evidence admitted, unless plaintiff's submissions directly
contradict them. If a fact is disputed, the Court will consider

the evidence provided by the parties to determine whether the dispute is genuine.

**A.    DOC Administrative Remedy Procedure**

Inmates incarcerated at Connecticut DOC facilities have access to the Inmate Administrative Remedies Process outlined in Administrative Directive 9.6 ("A.D. 9.6"). See generally Doc. #56-3 at 2-15.[4] Plaintiff does not dispute that A.D. 9.6 applies. See Doc. #76 at 3 (referencing A.D. 9.6 as the governing procedure).

A.D. 9.6 states: "The Department of Correction shall provide a means for an inmate to seek formal review of an issue relating to any aspect of an inmate's confinement that is subject to the Commissioner's authority. The Inmate Administrative Remedies Process enables the Department to identify individual and systemic problems, to resolve legitimate complaints in a timely manner and to facilitate the accomplishment of its mission." Doc. #56-3 at 2.

---

[4] A.D. 9.6 was revised on April 30, 2021. See State of Connecticut Department of Correction, Administrative Directive 9.6: Inmate Administrative Remedies, 3-4 (April 30, 2021), https://portal.ct.gov/-/media/DOC/Pdf/Ad/AD9/AD_0906_Effective_04302021.pdf. Plaintiff's Complaint concerns events allegedly occurring on March 26, 2018. See, e.g., Doc. #1 at 5. Accordingly, all references to A.D. 9.6 throughout this Ruling refer to the version that was in effect from August 15, 2013, through April 29, 2021, which defendants have attached as Exhibit 2. See Doc. #56-3 at 2-15.

> The type of remedies available to an inmate depends on
> the nature of the issue or condition experienced by the
> inmate or the decision made by correctional personnel.
> For all matters relating to any aspect of a prisoner's
> confinement that are subject to the Commissioner's
> authority and that are not specifically identified in
> subsections (B) through (I) of Administrative Directive
> 9.6(4), the applicable remedy is the Inmate Grievance
> Procedure set forth in 9.6(6).

Gulley v. Bujnicki, No. 3:19CV00903(SRU), 2019 WL 2603536, at *3

(D. Conn. June 25, 2019). Because plaintiff's claims do not

relate to any of the specifically identified matters in

subsections (B) through (I) of A.D. 9.6(4), his claims are

subject to the Inmate Grievance Procedure, which is set forth in

Subsection 6 of A.D. 9.6. See Doc. #56-3 at 3, 6-11. Plaintiff

does not dispute that the Inmate Grievance Procedure applies.

The Inmate Grievance Procedure entails an informal step,

followed by up to three formal steps.

"An inmate must attempt to seek informal resolution prior

to filing an inmate grievance." Id. at 6. An inmate may attempt

informal resolution "verbally with the appropriate staff member

or with a supervisor/manager. If the verbal option does not

resolve the issue, the inmate shall submit a written request via

CN 9601, Inmate Request Form." Id. Prison staff are required to

respond "within 15 business days from receipt of the written

request." Id.

"An inmate may file a grievance if the inmate is not

satisfied with the informal resolution offered." Id. at 7. "The

grievance must be filed within 30 calendar days of the
occurrence or discovery of the cause of the grievance." Id. This
grievance must be submitted on a "CN 9602, Inmate Administrative
Remedy Form[,]" and the inmate must "attach CN 9601, Inmate
Request Form, containing the appropriate staff member's
response[.]" Id. "If the inmate was unable to obtain a blank CN
9601, Inmate Request Form, or did not receive a timely response
to the inmate request, or for a similar valid reason, the inmate
shall include an explanation indicating why CN 9601, Inmate
Request Form, is not attached." Id. The inmate must submit the
CN 9602 by depositing it "in the Administrative Remedies box."
Id. This is commonly known as a "Level 1" grievance. Id. at 8.

A.D. 9.6 provides that each Level 1 grievance "shall be
reviewed for compliance with the Inmate Grievance Procedure and
investigated if the grievance is accepted." Id. DOC staff must
respond "in writing within 30 business days of receipt[.]" Id.
An inmate's grievance may be "Rejected, Denied, Compromised,
Upheld or Withdrawn." Id. at 7.

"An inmate may appeal a Level 1 disposition to Level 2
within five (5) calendar days of receipt of the decision[,]" or
"[i]f a response to a Level 1 grievance is not received within
30 business days[.]" Id. at 8. "A grievance appeal filed by an
inmate confined in a Connecticut correctional facility shall be
decided by the appropriate District Administrator[]" "within 30

business days of receipt[.]" Id. Level 2 is "the final level of

appeal for all grievances except as provided in Section 6(L)" of

A.D. 9.6. Id.[5]

The DOC maintains "[a] grievance file ... at each level for

each grievance[,]" which "include[s] a copy of the grievance,

each response, and any supporting documents submitted in support

of the grievance, presented during investigation, or relied upon

in the decision." Id. at 9. Additionally, the DOC maintains a

"Grievance Log," form CN 9608, which "include[s] the name and

number of the grievant, the dates of initial receipt and of the

response at that level, a brief description of the problem and

the disposition." Id. at 10.

### B.   Events Underlying the Complaint and Motion

On March 26, 2018, plaintiff was "issued a class A

disciplinary Report" "and was to be escorted and confined to

[Cheshire's] Restrictive Housing Unit ('RHU') until April 2,

2018." Doc. #56-2 at 3; see also Doc. #76 at 2; Doc. #1 at 5,

49-52. "Before escorting Plaintiff to RHU on March 26, 2018,

[defendant] Brown applied wrist restraints to Plaintiff. Brown

---

[5] In limited circumstances, an inmate may appeal a Level 2
disposition to Level 3. See Doc. #56-3 at 8. Level 3 review is
available only if the grievance: "1. challenges Department level
policy; 2. challenges the integrity of the grievance procedure;
or, 3. exceeds the established 30 business day time limit for a
Level 2 grievance response." Id. None of these circumstances are
applicable to plaintiff's grievance.

then secured Plaintiff's right-side while [defendant] Buckland secured Plaintiff's left side, both utilizing the reverse wristlock position." Doc. #56-2 at 3 (citations omitted); <u>see also</u> Doc. #76 at 2-10; Doc. #1 at 5-6, 52, 55. "Upon arrival at RHU," plaintiff was strip searched, during which process defendant "Czeremcha confiscated Plaintiff's rosary and cross." Doc. #56-2 at 3; <u>see also</u> Doc. #76 at 11; Doc. #1 at 8, 53-54. Plaintiff remained in RHU from March 26, 2018, to April 2, 2018. <u>See</u> Doc. #56-2 at 3; Doc. #76 at 2.

On April 12, 2018, plaintiff submitted an Informal Resolution, stating that his cross and rosary were "confiscated, for no reason," during that incident, and asking: "Why was my rosary and cross (confiscated/outside of directive policy." Doc. #1 at 78 (sic); <u>see also</u> Doc. #56-2 at 4; Doc. #56-4 at 49. On April 25, 2018, defendant Czeremcha responded to plaintiff's Informal Resolution, explaining that plaintiff's rosary and cross were confiscated because they are "metal and can pose a threat to safety and security." Doc. #1 at 78 (sic); <u>see also</u> Docs. #56-2 at 4; #56-4 at 49.

Plaintiff filed a Level 1 grievance, asserting that "illegal confiscation of inmates religious articles; (rosary-cross)[]" occurred on March 26, 2018. Doc. #56-4 at 41; Doc. #1 at 68 (sic). Plaintiff dated this grievance **April 26, 2018**. <u>See id.</u> In his Level 2 Appeal, plaintiff asserted that he filed this

14

grievance on **April 26, 2018**. <u>See</u> Doc. #56-4 at 40; Doc. #1 at 70. Plaintiff's Complaint also states that this grievance was filed on **April 26, 2018**. <u>See</u> Doc. #1 at 12. In his opposition to defendants' motion for summary judgment, however, plaintiff asserts for the first time that he filed this grievance on **April 25, 2018**. <u>See</u> Doc. #76 at 3. Defendants assert that the grievance was filed on April 26, 2018. <u>See</u> Doc. #56-2 at 4. The grievance was not received until May 3, 2018. <u>See</u> <u>id.</u>; Doc. #56-4 at 41; Doc. #1 at 68.[6]

On May 7, 2018, plaintiff's Level 1 grievance was rejected with the following explanation: "Per Administrative Directive 9.6 section 6C Filing a Grievance. 'The grievance must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance.'" Doc. #76 at 26 (sic); <u>see also</u> Doc. #56-2 at 4; Doc. #1 at 12, 68. On May 8, 2018, plaintiff filed a Level 2 Appeal, asserting that he "was sustained a religious substantial burden[]" and "filed a timely grievance on 4/26/2018, which is (30 days), as (9.6 A.D. Section 6(c))/ states." Doc. #76 at 28 (sic); <u>see also</u> Doc. #56-2 at 4; Doc. #1 at 70. Plaintiff's Level 2 Appeal was rejected with the following response: "The number of calendar days from the

---

[6] The Court takes judicial notice of the fact that April 25, 2018, was a Wednesday; April 26, 2018, was a Thursday; and May 3, 2018, was a Thursday.

occurrence when your religious item was confiscated (3/26/18), to the date you filed your grievance (4/26/18) totals 31 days. Accordingly, your level 2 grievance appeal is rejected. This grievance was filed improperly, therefore it is not exhausted however does not meet the criteria for a level 3 review." Doc. #76 at 28 (sic); see also Doc. #56-2 at 4; Doc. #1 at 70.

Defendants provided a copy of the "Grievance Log" as an exhibit to their motion. The Grievance Log includes the following information for each grievance: inmate name; inmate number; grievance summary; subject code; facility number; fiscal year;[7] and the date received, date disposed, and the disposition at levels one, two, and three, if applicable. See Doc. #56-4 at 6-37. The Log is accompanied by an Affidavit of Correctional Counselor Cooper (the "Cooper Affidavit") certifying that it is a "true and correct copy of the Cheshire C.I. Grievance Log" from "December 2017 [to] August 2018." Id. at 2. Plaintiff does not dispute, or indeed even address, the accuracy of the Grievance Log. See generally Docs. #76, #81.

---

[7] "Connecticut's fiscal year begins on July 1 of a calendar year and ends on June 30 of the following calendar year." Colon de Mejias v. Malloy, 353 F. Supp. 3d 162, 169 n.3 (D. Conn. 2018), aff'd sub nom. Colon de Mejias v. Lamont, 963 F.3d 196 (2d Cir. 2020). The Grievance Log shows information from December of Fiscal Year 2018 to August of Fiscal Year 2019, which corresponds to December of Calendar Year 2017 to August of Calendar Year 2018. See generally Doc. #56-4 at 6-37.

16

The Cooper Affidavit states that plaintiff filed a grievance "regarding rosary beads in RHU" which was received on May 3, 2018. Doc. #56-4 at 3. The Cooper Affidavit further asserts that "[p]laintiff did not file any grievance regarding an excessive force incident, an assault, or battery on March 26, 2018." Id.

The Grievance Log reports that plaintiff's Level 1 grievance for "Rosary Beads in RHU" was received on May 3, 2018, and rejected on May 7, 2018, and that the Level 2 appeal of that grievance was received on May 16, 2018, and rejected on May 31, 2018. See id. at 7. The Grievance Log reveals a total of seven grievances filed by plaintiff during the nine-month period captured; the summaries of the remaining six grievances confirm that they are unrelated to the events of March 26, 2018. See id. at 14, 18, 22, 32, 36.

## V.   DISCUSSION

### A.   Applicable Law

The Prisoner Litigation Reform Act ("PLRA") provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life,

17

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

"The Supreme Court has held that 'the PLRA exhaustion requirement requires proper exhaustion.' That is, 'prisoners must complete the administrative review process in accordance with the applicable procedural rules -- rules that are defined not by the PLRA, but by the prison grievance process itself.'" Johnson v. Killian, 680 F.3d 234, 238 (2d Cir. 2012) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006); and then quoting Jones v. Bock, 549 U.S. 199, 218 (2007)). "The PLRA's exhaustion requirement is designed to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004) (citation and quotation marks omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Woodford, 548 U.S. at 90-91. "[F]ailure to file a timely grievance constitutes failure to exhaust administrative remedies as required by the PLRA." Cole v. Miraflor, No. 02CV09981(RWS), 2003 WL 21710760, at *2 (S.D.N.Y. July 23, 2003) (emphasis added) (collecting cases); see also Williams v. Comstock, 425

18

F.3d 175, 177 (2d Cir. 2005) ("[T]he failure to timely file the grievance in accordance with IGP rules amounted to a failure to exhaust administrative remedies in this case.").

**B.  Analysis**

1.  <u>Date of Filing</u>

It is undisputed that plaintiff filed a grievance relating to events that occurred on March 26, 2018. <u>See</u> Doc. #56-4 at 41-42, 45; Doc. #1 at 67-69. The date of that filing is clearly a material fact. The question for the Court is whether there is any genuine dispute as to <u>when</u> plaintiff filed that grievance.

Despite the ample evidence demonstrating that plaintiff's grievance was filed on (or after) April 26, 2018, plaintiff now asserts, for the first time, in his opposition to summary judgment, that he filed his grievance on April 25, 2018. Plaintiff asserts in argument that he "placed his grievance in grievance box on the night of 4/25/2018." Doc. #76 at 3. This assertion is unavailing, and it is insufficient to give rise to a genuine dispute of material fact.

Plaintiff attached a copy of the Level 1 grievance to his Complaint; he typed the date April 26, 2018, on that document <u>three</u> separate times. <u>See</u> Doc. #1 at 67, 68, 69. He also attached a copy of the Level 2 appeal to the Complaint, in which plaintiff states that he "filed a timely grievance on 4/26/18[.]" <u>Id.</u> at 70. In the Complaint itself, plaintiff

19

asserts that he "properly filed administrative remedies on 4/26/2018[.]" Id. at 12.

As support for plaintiff's newly asserted claim that he filed his grievance on April 25, 2018, plaintiff argues that his grievance was "picked up and documented on date: 4/26/2018," meaning that "it was picked up on that day early in the morning[.]" Doc. #76 at 17. Plaintiff states that he would not have been able to place the grievance in the box prior to the time when a Correction Officer would have retrieved the grievances from the grievance box, so he must have put it in the box on April 25, 2018. See id. at 3, 17. This argument fails. First, the Grievance Log shows that plaintiff's grievance was "received" on May 3, 2018, not April 26, 2018. See Doc. #56-4 at 7. The grievance itself also shows that it was received on May 3, 2018. See Doc. #56-4 at 41; Doc. #1 at 68. There is no indication in the record of it having been "picked up" on April 26, 2018. The sole basis for April 26, 2018, being the date of filing is **plaintiff's own use of that date**. Second, if plaintiff is correct that a grievance is received the day after it is deposited in the box, that would suggest that this grievance was deposited (and thus treated as filed) on May 2, 2018, not April 25, 2018.[8]

---

[8] Defendants state April 26, 2018, as the date the grievance was filed in their Statement of Undisputed Material Facts, see Doc.

The record reveals that plaintiff has consistently claimed that he filed the grievance on April 26, 2018, and changed his position only when defendants filed their motion for summary judgment. "Plaintiff alleges for the first time in opposition to summary judgment that" he filed the grievance on April 25, 2018. Pierre v. City of New York, 531 F. Supp. 3d 620, 628 n.5 (E.D.N.Y. 2021). "A plaintiff, even when proceeding pro se, may not raise new allegations for the first time in opposition to summary judgment." Id. Notably, plaintiff has also failed to provide any evidence, such as a sworn affidavit, to support his assertion that the grievance was filed on April 25, 2018. However, even if plaintiff had provided an affidavit certifying that he filed the grievance on April 25, 2018, it would not be enough to create a genuine dispute of material fact. See Petrisch v. HSBC Bank USA, Inc., No. 07CV03303(KAM)(JMA), 2013 WL 1316712, at *10 (E.D.N.Y. Mar. 28, 2013) ("[I]t is well established that 'a self-serving affidavit that merely reiterates conclusory allegations in affidavit form is insufficient to preclude summary judgment.'" (quoting United Mag. Co. v. Murdoch Magazines Distribution, Inc., 393 F. Supp.

---

#56-2 at 4, and the Court must construe the facts in the light most favorable to plaintiff. See Beyer, 524 F.3d at 163. Accordingly, the Court accepts the earlier date of April 26, 2018, as the date the grievance was filed, even though it was not received until May 3, 2018. That gives plaintiff a one-week "benefit of the doubt" already.

2d 199, 211 (S.D.N.Y. 2005), aff'd sub nom. United Mag. Co. v. Curtis Circulation Co._, 279 F. App'x 14 (2d Cir. 2008)) (collecting cases). Rather, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [his] version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) (collecting cases).

Accordingly, the Court finds that plaintiff's unsupported assertion that he filed the grievance on April 25, 2018, is insufficient to raise a genuine dispute as to the material fact of the date the grievance was filed. The Court therefore proceeds to consider the merits of defendants' motion in light of the evidence that the grievance was filed on April 26, 2018.

## 2.   First Amendment Free Exercise and RLUIPA

Defendants contend that they are entitled to judgment as a matter of law with respect to plaintiff's First Amendment and RLUIPA claims because, "for purposes of his First Amendment free exercise claim and RLUIPA claims, Plaintiff did not file a timely level one grievance within thirty calendar days of March 26, 2018, the date on which his rosary and cross were confiscated." Doc. #56-1 at 5. Plaintiff responds that his grievance was timely filed. See Doc. #76 at 1. Specifically, plaintiff contends:

> [P]laintiff timely filed the exhaustion of
> administrative remedies within the (30-day) time frame
> pursuant to the "mailbox rule". The federal courts
> practice and protocol utilizes the (30/60/90) day time
> frames in their initial review orders, appeals, ect, for
> plaintiffs. This plaintiff pursuant to court practice
> and protocol has adopted also the procedure and practice
> of a (30/60/90) day time frame to submit all prospective
> documents to be ruled upon, and, not calendar days.

Doc. #76 at 1.[9]

As an initial matter, the Court notes that it is undisputed

that plaintiff filed a grievance regarding his First Amendment

and RLUIPA claims. Plaintiff's First Amendment and RLUIPA claims

were permitted to proceed based on the confiscation of

plaintiff's rosary and cross. See Doc. #25 at 25-29. The

grievance at issue contains the following subject line:

"RE:Illegal confiscation of inmates religious articles; (rosary-

---

[9] Plaintiff also asserts, in passing, that "[m]any jurisdiction
do not require exhaustion of administrative remedies under the
PLRA, due to the fact that it is many times the nature of the
constitutional violation inwhich the atrocities are so much that
'shocks the conscience', that many district courts allow the
cases to proceed due to its nature." Doc. #76 at 8 (sic).
Plaintiff cites only one case to support this proposition: Cruz
v. Jordan, 80 F. Supp. 2d 109, 124 (S.D.N.Y. 1999). The court in
Cruz held "that plaintiff [wa]s required to exhaust all such
administrative remedies as are available before" the action
could proceed. 80 F. Supp. 2d at 121 (quotation marks omitted).
Accordingly, Cruz does not support plaintiff's assertion that he
is not required to exhaust his administrative remedies. The
assertion that "many jurisdictions" do not require exhaustion is
simply incorrect. PLRA exhaustion is required by federal statute
and Supreme Court precedent, meaning that PLRA exhaustion is
required in all federal jurisdictions. A plaintiff is exempt
from PLRA exhaustion only in very limited circumstances, none of
which are applicable here. See Ross v. Blake, 578 U.S. 632, 638
(2016); Rucker v. Giffen, 997 F.3d 88, 93 (2d Cir. 2021).

cross), violating due process of Dept. of Correction protocol and state and federal laws, causing substantial burden of religion." Doc. #1 at 68; Doc. #56-4 at 41 (sic). Thus, the Court's inquiry is limited to whether this grievance was timely filed.

There is no genuine dispute regarding the fact that plaintiff's grievance was filed on April 26, 2018. See supra Section V.B.1. Because plaintiff filed the grievance on April 26, 2018, his grievance was untimely. A.D. 9.6 requires that grievances "be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance." Doc. #56-3 at 7 (emphasis added). Plaintiff argues that he is "utilizing the (30-day) practice and procedure, not, any courts (31-day) day practice and procedure in federal courts which this plaintiff have never seen in any state or federal courts any (31-day) time frame, only, (30/60/90) day time frames within, initial review orders, appeals, submissions, ect." Doc. #76 at 2 (sic). This argument is unavailing.

The requirements for PLRA exhaustion are defined "'by the prison grievance process itself.'" Johnson v. Killian, 680 F.3d at 238 (quoting Jones, 549 U.S. at 218). Here, the DOC grievance process is outlined in A.D. 9.6, which, as discussed above, requires that the grievance be submitted within thirty calendar days of the incident. See Doc. #56-3 at 7. Thus, any procedural

24

rule that applies in this Court is irrelevant to whether plaintiff complied with A.D. 9.6.

Plaintiff appears to assert that federal courts use a unique system of calculating the passage of days that somehow differs from the "calendar days" counted under A.D. 9.6. The computation of time in federal court is governed by Federal Rule of Civil Procedure 6. Rule 6 requires that federal courts "(A) exclude the day of the event that triggers the period; (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and (C) include the last day of the period," unless it is "a Saturday, Sunday, or legal holiday[.]" Fed. R. Civ. P. 6(a)(1). Applying these principles to this case, the calculation of the thirty-day period would begin on March 27, 2018, and end on April 25, 2018. Thus, even if the federal rules were relevant to the question of whether plaintiff complied with A.D. 9.6, plaintiff's argument would still lack merit.

Plaintiff also appears to argue that every month is counted as thirty days, no matter how many days the month has in it.

> Courts many times as an example will rule on a date lets say: 1/1/2022, year as example, and they give the litigant till: 2/1/2022, as an example, to the courts this is a (30-day) time frame even that the month of January has 31 days in it. Another example is a ruling is done on 2/1/2022, year as example, and the court states that the litigant has until: 3/1/2022, but, in February there are only 28 days. The Court and while many of my litigation still considers that a (30-day) time frame even that there is only 28 days in that month of February[.]

Doc. #76 at 18 (sic). This argument is frivolous, and false.

It is undisputed that the incident at issue occurred on March 26, 2018. See, e.g., Doc. #1 at 5, 68; Doc. #56-2 at 2. Thirty calendar days from March 26, 2018, is April 25, 2018. Plaintiff filed his Level 1 grievance thirty-one days after the incident, on April 26, 2018. The majority of plaintiff's opposition memorandum is dedicated to the assertion that he submitted the grievance on April 25, 2018, which he concedes is "thirty days from the incident of 3/26/2018." Doc. #76 at 2. Because plaintiff acknowledges that April 25, 2018, was thirty days from March 26, 2018, he must also necessarily concede that April 26, 2018, was thirty-one days from March 26, 2018. Thus, because plaintiff has failed to raise any genuine dispute as to the fact that his grievance was filed on April 26, 2018, plaintiff's grievance was filed thirty-one days after the March 26, 2018, incident giving rise to plaintiff's grievance.

Because plaintiff's grievance was filed thirty-one days after the occurrence of the incident he was grieving, his grievance was untimely. See Wilson v. McKenna, 661 F. App'x 750, 753 (2d Cir. 2016) (finding that plaintiff "did not submit a timely Level 1 grievance" where his Inmate Request form was filed "thirty-one days after he allegedly sustained an injury[]" and he never filed an Inmate Administrative Remedy Form); Davis v. Williams, No. 3:16CV01981(JAM), 2019 WL 1012008, at *3 (D.

Conn. Mar. 4, 2019) (holding that plaintiff failed to exhaust his administrative remedies when he filed a grievance forty days after the incident, even though he "did not receive a timely response" to his Inmate Request Form); Lopez v. Semple, No. 3:18CV01907(KAD), 2021 WL 2312563, at *6 (D. Conn. June 7, 2021) (holding that plaintiff failed to exhaust his administrative remedies when he filed a grievance 78 days after the alleged incident). Thus, the record establishes that plaintiff failed to properly exhaust his administrative remedies with respect to his First Amendment Free Exercise and RLUIPA claims.

### 3. Eighth Amendment Excessive Force and State Law Assault and Battery

Even if plaintiff's grievance had been timely filed, it would not be sufficient to exhaust plaintiff's excessive force claims. Defendants contend that they are entitled to judgment as a matter of law with respect to plaintiff's Excessive Force and state law assault and battery claims because "Plaintiff did not avail himself of any administrative remedies, let alone exhaust them, with respect to his Eighth Amendment excessive force claim and his state law claims for assault and battery relative to the alleged use of force during his escort to RHU on March 26, 2018[.]" Doc. #56-1 at 5. Plaintiff responds: "Pursuant to Rule #20-Extent of Relief: Section#(3): Plaintiff does not have to defend against all the relief demanded against the defendants in

grievance, and does not require to articulate in grievance, only allege with supporting evidence, and, the defendants without a reasonable doubt must disprove the video." Doc. #76 at 10 (sic).[10]

As an initial matter, the Court notes that plaintiff's reliance on Federal Rule of Civil Procedure 20 is misplaced. Rule 20 governs the "Permissive Joinder of Parties[,]" and has no bearing on whether plaintiff has properly exhausted his administrative remedies pursuant to the PLRA. Fed. R. Civ. P. 20. Plaintiff's argument focuses on the <u>merits</u> of his claim, repeatedly referencing video evidence of the alleged excessive force incident, rather than the PLRA's requirement that he "'complete the administrative review process in accordance with the applicable <u>procedural</u> rules[.]'" <u>Jones</u>, 549 U.S. at 218 (quoting <u>Woodford</u>, 548 U.S. at 88) (emphasis added). The focus of the exhaustion requirement of the PLRA is procedural, not substantive. The Court's inquiry at this stage is limited to whether plaintiff followed the proper procedural steps, <u>not</u> whether his claim has merit. <u>See</u> <u>Foreman v. Comm. Goord</u>, No. 02CV07089(SAS), 2004 WL 385114, at *6 (S.D.N.Y. Mar. 2, 2004)

---

[10] Plaintiff asserts that "there is abundant direct 'video' evidence that solidifies the/and defendants in (Eighth Amendment excessive force claim/First Amendment free exercise claim/state assault law claims for assault and battery/RLUIPA-claim), are violations." Doc. #76 at 9 (sic).

("[T]he question of exhaustion of administrative remedies must be addressed before the Court can consider the merits of plaintiff's claims[.]").

Plaintiff's Eighth Amendment excessive force and state law assault and battery claims were permitted to proceed based on his allegations that "that the defendants applied the handcuffs too tightly and bent back his wrists for the very purpose of causing him pain." Doc. #25 at 18. A review of the Grievance Log reveals that plaintiff did not file any grievances "between March 26, 2018 and April 25, 2018 pertaining to the alleged incident of excessive force, assault, and/or battery on March 26, 2018 as set forth in the Complaint." Doc. #56-1 at 11; accord Doc. #56-4 at 3 ("Plaintiff did not file any grievance regarding an excessive force incident, an assault, or battery on March 26, 2018.").[11] Plaintiff does not dispute this assertion. See generally Docs. #76, #81.

_____

[11] The Grievance Log shows that plaintiff filed a total of seven grievances from December 2017 to August 2018. See Doc. #56-4 at 7, 14, 18, 22, 32, 36. The affidavit of Correctional Counsel Cooper describes the grievances "received from the Plaintiff, Jan Gawlik, Inmate No. 138888" as follows: "February 2, 2018 regarding missing CDs and the wearing of rosary beads[;]" "February 21, 2018 regarding denial of catholic confirmation[;]" "March 12, 2018 regarding religious articles[;]" "May 3, 2018 regarding rosary beads in RHU[;]" "May 10, 2018 regarding the denial of a visit from past victim[;]" "and June 28, 2018 regarding the denial of Catholic Legion of Mary[.]" Doc. #56-4 at 2-3.

Plaintiff appears to argue that he was not required to raise his claims of excessive force in the April 26, 2018, grievance. See Doc. #76 at 10. He is mistaken. An inmate's grievance "must provide enough information about the conduct of which they complain to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d at 697. "[T]he mere fact that plaintiff filed some grievance ... does not automatically mean that he can now sue anyone who was in any way connected with the events giving rise to that grievance." Turner v. Goord, 376 F. Supp. 2d 321, 324 (W.D.N.Y. 2005); see also Riles v. Semple, No. 3:17CV02178(MPS), 2022 WL 124231, at *2 (D. Conn. Jan. 13, 2022) (finding that the PLRA requires exhaustion of the separate "'components' or 'aspects' of" an inmate's claims). Rather, plaintiff must "specifically describe" the conduct of which he complains to ensure he "give[s] the facility enough information to investigate [his] allegations[.]" Wright v. Potter, No. 9:14CV01041(DNH)(TWD), 2016 WL 5219997, at *5 (N.D.N.Y. June 28, 2016), report and recommendation adopted, 2016 WL 5173283 (N.D.N.Y. Sept. 21, 2016).

The only grievance that plaintiff filed with respect to the March 26, 2018, incident, does not reference any use of excessive force. See Doc. #1 at 67-69; Doc. #56-4 at 41-42, 45. The only mention of force in that grievance is plaintiff's

speculative allegation that he "would have been chemical pepper
sprayed in the eyes and face[]" if he did not "remove [his]
rosary and cross from around [his] head." Doc. #1 at 69
(emphasis added); Doc. #56-4 at 45. "[A]n official investigating
plaintiff's grievance [would not] reasonably be expected to have
explored" any use of force against plaintiff, because his
grievance did not put prison officials on notice of his
complaint relating to the handcuffs and use of force. Turner,
376 F. Supp. 2d at 325. Rather, plaintiff's grievance was
limited to his religious freedom claims. The passing mention of
a theoretical (but non-occurring) use of pepper spray in the
grievance was offered in support of the religious freedom claim,
was wholly unrelated to the tightness of the handcuffs or the
bending of his wrists, and was not a separate claim of conduct
such that prison officials would be on notice of a separate
excessive force claim. See Shehan v. Erfe, No. 3:15CV01315(MPS),
2017 WL 53691, at *8 (D. Conn. Jan. 4, 2017) (finding that an
inmate exhausted his administrative remedies "only with respect
to those of the plaintiff's claims in this action that he
actually asserted in the grievance[]" (emphasis added)).

Thus, the record establishes that plaintiff also failed to
exhaust his administrative remedies as to his Eighth Amendment
excessive force and state law assault and battery claims.

## VI.   __CONCLUSION__

The record establishes that plaintiff "failed to properly exhaust the administrative remedies available to him before filing suit in federal court[]" as to all of his remaining claims. Wilson, 661 F. App'x at 753. The PLRA requires exhaustion. Failure to exhaust available administrative remedies entitles defendants to summary judgment. See Mckinney v. Prack, 170 F. Supp. 3d 510, 518 (W.D.N.Y. 2016) (granting summary judgment in favor of defendants on plaintiff's 42 U.S.C. §1983 claims where plaintiff failed to exhaust his administrative remedies under the PLRA). The only grievance plaintiff filed related to the events of March 26, 2018, was untimely, and failed to place prison officials on notice of his claims regarding the use of force in application of handcuffs.

Accordingly, and for the reasons set forth herein, defendant's Motion for Summary Judgment [**Doc. #56**] is **GRANTED, as to all defendants, as to all claims.**

Judgment shall enter in favor of defendants.

The Clerk shall close this case.

It is so ordered this 14th day of June, 2022, at Bridgeport, Connecticut.

　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　HON. SARAH A. L. MERRIAM
　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE